UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JOHNATHAN FOSTER** | **CIVIL ACTION NO. 22-5440** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **RICHLAND PARISH DETENTION CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Johnathan Foster, a prisoner at Richland Parish Detention Center ("RPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately October 3, 2022, under 42 U.S.C. § 1983. He names the following defendants: RPDC, Lieutenant Nicole Johnson-Soignier, Sergeant Eric Rushing, Deputy C. Huston, and Deputy Moore.[1]

For reasons that follow, the Court should retain the following claims: (1) that Deputies Huston and Moore handcuffed Plaintiff, sprayed him with mace, and left him "with no water to clean up or drink for 72 hours," did not provide or arrange decontamination or medical treatment, did not allow him to shower for 11 days, and took all his clothing; (2) that Lieutenant Johnson-Soignier ordered Sergeant Rushing into the cell and allowed Rushing to mace Plaintiff; (3) that Sergeant Rushing ran in the cell and sprayed Plaintiff with mace; and (4) that Rushing and Johnson-Soignier did not provide or arrange decontamination or medical treatment, turned the water off, moved him to a lockdown cell which lacked a bed, stripped him of all his clothing, and left him there for 72 hours without water.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

The Court should dismiss the following: (1) Plaintiff's claims against RPDC; (2) his claims that on October 17, 2021, four officers entered his cell, handcuffed him, sprayed him with mace, placed him in a restraining chair, and left him in the chair for approximately three hours; (3) his claims that on August 25, 2022, his mattress was taken for 21 days; (4) his claim that a lieutenant threw some of his legal work in the trash; (5) his claims that he was discriminated against and refused G.E.D. classes, a trustee job, anger management classes, and a parenting class; and (6) his request for injunctive relief.

## **Background**

Plaintiff states that on October 15, 2021, two male officers removed him "from G-Dorm for no apparent reason . . . and placed [him] into a lockdown cell[.]" [doc. # 1, p. 5]. "[A]fter a few hours," Plaintiff started kicking/knocking "on the door and two officers came into the lockdown cell threatening" to spray him with mace. [doc. #s 1, p. 5; 5, p. 1]. Plaintiff was trying to ask them why he was in lockdown. [doc. # 1, p. 5]. The officers did not offer an answer, so he started kicking/knocking on the door again "about an hour or two later[.]" [doc. #s 1, p. 5; 5, p. 1]. Plaintiff claims that Deputies Huston and Moore then entered his cell, handcuffed him, sprayed him with mace, and left him there "with no water to clean up or drink for 72 hours[.]" *Id.* He also claims that the officers did not allow him to shower for 11 days, and they took all his clothing. [doc. # 1, p. 5].

Plaintiff alleges that he was sprayed with mace again the same day. [doc. #s 1, p. 5; 5, p. 1]. He "covered a camera in the cell to gain the officers' attention because he still had never received an answer [as] to why he was placed in lockdown." [doc. # 5, p. 1]. Lieutenant Johnson-Soignier came to his cell, told him to "uncover the camera," and opened the door. [doc. # 1, p. 5]. He claims that Johnson-Soignier "ordered Sergeant Rushing into the cell and allowed

2

[Rushing] to mace [him] . . . ." [doc. # 5, p. 1]. According to Plaintiff, "as soon as she opened the door, [Sergeant] Rushing ran in the lockdown cell and maced [him][.]" [doc. # 1, p. 5]. He adds that Johnson-Soignier "was shift supervisor that day and allowed her officers to act in a very unprofessional manner." [doc. # 5, p. 1]. He claims that when he tried to clean himself at a sink, they turned the water off, moved him to a lockdown cell which lacked a bed, stripped him of all his clothing, and left him there for 72 hours without water. [doc. # 1, p. 5]. He was forced to sleep on the floor. *Id.* He was never "given any decontamination or medical treatment after being sprayed with mace." [doc. # 5, p. 1].

Plaintiff alleges that both "incidents" caused him severe skin and eye irritation and "a degrading and humiliating psychological impact . . . ." [doc. # 5, p. 1].

Plaintiff maintains that "his actions and responses to the officers that day never escalated to a point that the officers could justify such excessive force as he never posed such a threat to them." *Id.* at 1-2. Plaintiff also states that he "was given 4 write ups[,]" one "for property destruction and three for aggravated disobedience." *Id.* at 2. He "had all 855 days of his good-time credits taken away from him." *Id.*

Plaintiff claims that on October 17, 2021, when he knocked to try and obtain help, four officers entered his cell, handcuffed him, sprayed him with mace, placed him in a restraining chair, and left him in the chair for approximately three hours. [doc. # 1, p. 5]. He adds: "no shower or water coming from the sink at all for 4 days. [sic]." *Id.*

Plaintiff claims that on August 25, 2022, "they" took his mattress. *Id.* He received a mattress "today," when he entered "general population." *Id.* at 5-6. Plaintiff signed his initial pleading on September 15, 2022; thus, in his initial pleading he suggested that he lacked a mattress for approximately 21 days. *Id.* at 4. He confirms in an amended pleading that he lacked

3

a mattress for 21 days. [doc. # 5, p. 2]. He states that "officers knew it would be a physical strain on [his] body" and that he suffered psychological anguish and severe aches and pains. *Id.*

Plaintiff claims that on September 12, 2022, a lieutenant threw some of his legal work in the trash. *Id.* at 6.

Plaintiff claims that RPDC opens and copies his legal mail. *Id.*

Plaintiff claims that "they" have discriminated against him by refusing him G.E.D. classes, a trustee job, anger management classes, and a parenting class. *Id.* He does not "know why [he] can't get any help" at RPDC. *Id.*

Plaintiff seeks (1) $80,000.00 for his pain and suffering and (2) the "shutdown" of RPDC. [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action

in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Entity Unamenable to Suit**

Plaintiff names RPDC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

RPDC does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against this entity.

### 3. Identifying a Responsible Defendant

Plaintiff claims that on October 17, 2021, when he knocked to try and obtain help, four officers entered his cell, handcuffed him, sprayed him with mace, placed him in a restraining chair, and left him in the chair for approximately three hours. [doc. # 1, p. 5].

Plaintiff claims that on August 25, 2022, "they" took his mattress. *Id.* He lacked a mattress for approximately 21 days. *Id.* at 5-6.

Plaintiff claims that on September 12, 2022, a lieutenant threw some of his legal work in the trash. *Id.* at 6.

Plaintiff claims that "they" discriminated against him by refusing him G.E.D. classes, a trustee job, anger management classes, and a parenting class. *Id.*

As above, a complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Here, the undersigned instructed Plaintiff to "provide the name of each defendant who allegedly violated his constitutional rights, and provide a separate description of what, exactly, each defendant did to violate his rights." [doc. # 4, p. 3]. Plaintiff, however, did not identify a responsible defendant for these claims. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant).

At best, Plaintiff names groups of individuals, but he does not refer the Court to any specific defendant or defendants. The Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations. *See Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm."). Accordingly, the Court should dismiss these claims.

### 4. Standing

Plaintiff asks the Court to close RPDC. [doc. # 1, p. 4]. He lacks standing to pursue this relief.

"A litigant seeking redress in federal court must show that he has standing to pursue his claims." *Adams v. Pearl River Valley Water Supply Dist.*, 2022 WL 2829756, at *3 (5th Cir. July 20, 2022). "Litigants must also demonstrate standing with respect to the *type* of relief they seek." *Id.*

"To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief. Courts have divided this rule into three components: injury in fact, causation, and redressability." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (internal footnotes omitted).

"Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries. Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs

8

seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact. To be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical. The purpose of the requirement that the injury be 'imminent' is to ensure that the alleged injury is not too speculative for Article III purposes. For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.* (internal footnotes, quotation marks, and quoted sources omitted).

Here, closing RPDC is not likely to remedy or redress any harm or injury which Plaintiff suffered in the past. As above, injunctive relief cannot conceivably remedy any past wrong.

Plaintiff does suggest that he continues to suffer from psychological harm from past constitutional violations. [doc. # 5, p. 1]. But "to establish redressability, a plaintiff must show a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022). Here, Plaintiff does not present a substantial likelihood that closing RPDC will redress any continuing psychological harm from past actions. His requested relief is unrelated to the harm from which he suffers: closing RPDC will not help Plaintiff recover from psychological harm from past, concluded actions.[3]

Closing RPDC could in theory redress uses of excessive force or failures to render medical care which might occur in the future at RPDC; in other words, if RPDC is closed, nothing can happen at RPDC. However, Plaintiff does not allege any continuing injury—except for ongoing psychological harm, which as above could not conceivably be redressed by closing

---

[3] Plaintiff does not, for example, seek mental health care.

9

RPDC—or any substantial risk that excessive force or unconstitutional medical care will imminently occur. Plaintiff does mention that he is concerned for his safety at RPDC,[4] but his fear is conjectural or hypothetical and only amounts to *possible* future injury. *See Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) ("[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."); *Adams*, 2022 WL at *4 (finding no standing where the plaintiffs "at best offered [a]llegations of *possible* future injury that they have not claimed is imminent, or '*certainly impending*,' or anything other than speculative."). Simply put, there is no continuing or threatened conduct to enjoin.[5]

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that the following be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted: Plaintiff Johnathan Foster's claims against RPDC; his claims that on October 17, 2021, four officers entered his cell, handcuffed him, sprayed him with mace, placed him in a restraining chair, and left him in the chair for approximately three hours; his claim that on August 25, 2022, his mattress was taken for 21 days; his claim that a lieutenant threw some of his legal work in the trash; and his claims that he was discriminated against and refused G.E.D. classes, a trustee job, anger management classes, and a parenting class.

---

[4] [doc. # 5, p. 1].

[5] *See Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308 (5th Cir. 1997) (plaintiff lacked standing to seek injunctive relief because there was no threat of present or future harm); *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (denying injunctive relief when plaintiff could not show that she suffered any continuing harm or that there was a real or immediate threat of recurring harm); *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (speculative future injury alone is not enough to warrant injunctive relief).

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for injunctive relief be **DISMISSED WITHOUT PREJUDICE** for lack of standing and as frivolous.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 20th day of December, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge